```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND

RODMAN LOCAL 201 PENSION,       :
WELFARE, VACATION, AND
APPRENTICE FUNDS, et al.        :

     v.                         :   Civil Action No. DKC 16-3497

                                :
CONTRACT DESIGN & DEVELOPMENT,
LLC                             :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Security Act of 1974 ("ERISA") is Plaintiffs' motion for default judgment. (ECF No. 10). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motion will be granted in part and Defendant will be ordered to submit to an audit.

**I.   Background**

Plaintiffs are trustees of various trust funds associated with the International Association of Bridge, Structural, Ornamental & Reinforcing Ironworkers Union No. 201 ("the Funds"). The Funds are employee benefit plans within the meaning of § 3(3) of ERISA. *See* 29 U.S.C. § 1002(3). Defendant Contract Design & Development, LLC is an employer engaged in an industry affecting commerce under ERISA. *See* 29 U.S.C. §§

1002(5), (12). The Funds were established and are maintained pursuant to the Restated Agreements and Declarations of Trust ("the trust agreements") and a collective bargaining agreement between Rodman Local No. 201 and Defendant.

On October 21, 2016, Plaintiffs filed a complaint on behalf of the Funds alleging that Defendant breached the collective bargaining and trust agreements by failing to make contributions and submit contribution reports for October, November, and December, 2015. According to the complaint, Defendant was required to make contributions to the Funds for "each hour worked by employees of the Defendant performing work covered by the Collective Bargaining Agreement . . . ." (ECF No. 1 ¶ 11). Additionally, Defendant was obligated to submit forms every month reporting the amount of contributions due. The trust agreements provide that if an employer fails to make timely contributions, it must pay liquidated damages if payment is not postmarked by the last day of the month in which contributions are due. Plaintiffs further allege that Defendant was also obligated to remit employees' dues deducted from their pay to the Funds' third-party administrator. (*Id*. at ¶ 23).

The Plaintiffs' complaint claims that Defendant failed to make any payments. In addition to the outstanding contributions, Plaintiffs seek employees' dues, liquidated

2

damages and interest for late payments, as well as attorneys' fees and costs. Plaintiffs recite that they were made aware of the amounts due by a union member who previously worked for Defendant and provided Plaintiffs with his weekly payroll sheets. (ECF No. 10-4, p. 3, 4).

Plaintiffs served the summons and complaint on Defendant on November 1, 2016. When Defendant failed to respond within the requisite time period, Plaintiffs moved for the entry of default. The clerk entered default against Defendant on January 3, 2017. (ECF No. 8). Plaintiffs filed the subject motion for entry of default judgment on February 2, 2017. (ECF No. 10).

Plaintiffs Trustees of the Rodman 201 Pension, Welfare, Vacation and Apprentice Funds ("Rodman Funds") seek default judgment in the amount of $4,793.04 which consists of $3,661.30 in contributions, liquidated damages of $366.13, and interest, at the time the motion was filed, of $765.61. (ECF No. 12).

Plaintiff the Annuity Fund seeks $1,234.52 representing unpaid contributions in the amount of $924.00, liquidated damages of $184.80, and interest, at the time the motion was filed, of $125.72. (ECF No. 10-6, p. 5).

Plaintiffs also seek unremitted union dues in the amount of $421.20, attorneys' fees of $5,556.75, and costs of $675.00.

3

(ECF No. 10-1).  Additionally, Plaintiffs move for an order directing Defendant to submit to a complete audit of its wage and payroll records for the period August 1, 2015 through the date of judgment.

For the following reasons, Plaintiffs' motion will be granted in part and denied in part.

**II. Standard of Review**

Pursuant to Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2).  A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002); *Lipenga v. Kambalame*, 219 F. Supp. 3d 517 (D.Md. 2016).  The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be

4

appropriate when the adversary process has been halted because of an essentially unresponsive party, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F.Supp.2d at 422. The court first determines whether the unchallenged factual allegations constitute a legitimate cause of action, and, if liability is established, the court then makes an independent determination of damages. Fed. R. Civ. P. 55(a). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("on default judgment, the Court may only award damages without a hearing if the record supports the damages requested").

**III. Analysis**

Assuming the truth of the well-pleaded allegations of the complaint, as the court must upon entry of default, Plaintiffs

5

have established a violation under ERISA. Section 502(a)(3) authorizes parties to enforce the provisions of trust agreements. *See* 29 U.S.C. § 1132(a)(3) (providing that a civil action may be brought: "(A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any . . . terms of the plan"). According to the complaint, Defendant is a signatory to the Restated Agreements and Declarations of Trust and is, therefore, obligated to comply with the terms of the Trust Agreements, which require it to submit to an audit at the request of the Funds' trustees. Based on these undisputed allegations, the Funds have stated a sufficient claim for relief under ERISA. *See La Barbera v. Fed. Metal & Glass Corp.*, 666 F.Supp.2d 341, 348 (E.D.N.Y. 2009) (entering default judgment in favor of trustees where the complaint alleged that an employer refused to submit an audit despite being contractually bound to do so by a CBA and trust agreement); *see also National Elec. Ben. Fund v. AC-DC Elec., Inc.*, Civ. No. DKC 11-0893, 2011 WL 6153022 (D.Md. Dec. 9, 2011).

ERISA authorizes courts to grant "equitable relief as . . . appropriate" where a plaintiff brings a successful action to enforce its requirements. *See* 29 U.S.C. § 1132(g)(2)(E); *see*

6

*also La Barbera*, 666 F.Supp.2d at 350. "Such relief may include an injunction ordering the defendant to submit to an audit." *Int'l Painters & Allied Trades Indus. Pension Fund v. Exec. Painting, Inc.*, 719 F.Supp.2d 45, 52 (D.D.C. 2010). Indeed, pursuant to ERISA, benefit plan trustees have the right to review the records of employers contributing to the plans. *Id*. (citing *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 581 (1985)).

Because ERISA authorizes injunctive relief as a possible remedy, an injunction requiring Defendants to submit to an audit is warranted as long as the Funds establish the prerequisites for an injunction – namely, a showing of irreparable harm and the absence of an adequate legal remedy. *La Barbera*, 666 F.Supp.2d at 350-51.

Plaintiffs have not explicitly asserted that there is no adequate remedy at law or that irreparable harm will result if injunctive relief is not granted; however, the record clearly reflects that these elements are present. Specifically, if an audit is not permitted, Plaintiffs will have no means of ensuring Defendant's compliance with the terms of the Trust Agreements, nor will they be able to collect any amounts to which they may be entitled. Accordingly, Plaintiffs are entitled to conduct an audit and Defendant will be directed to

7

produce any records requested by Plaintiffs' auditor within thirty (30) days.  Should the audit reveal unpaid or delinquent contributions, Plaintiffs may petition the court, with proper evidentiary support, requesting appropriate relief, including reimbursement of the audit fee and attorneys' fees and costs associated with the litigation.

### A.   Unpaid Contributions

The original motion for default judgment demands payment to Plaintiffs Rodman Funds of $3,738.55 in contributions.  At the direction of the court, Plaintiffs supplemented their motion for default judgment reducing the amount sought to $3,661.30 in unpaid contributions.  Plaintiffs support their request based on a spreadsheet attached to its supplement titled Summary of Contributions and Dues which reflect 235 hours for which Defendant failed to make contributions to the Rodman Funds and 231 hours for which Defendant failed to make contributions to the Annuity Fund.  (ECF No. 12-1).  Plaintiffs recite that the Annuity Fund failed to account for four (4) hours worked by Defendant's employee in December, 2015, but does not wish to pursue collection contributions for these four hours.

In support of these amounts, Plaintiffs submit the declarations of Cathy Cole (ECF No. 10-5) and Rhonda St. Clair (ECF No. 10-6).  Ms. Cole is employed by GEMGroup, a third party

administrator for the Rodman Funds. Rhonda St. Clair is employed by Lawrence C. Musgrove Associates, Inc. which performs services as a third party administrator to jointly administered Taft-Hartley Trust Funds, as the Administrator of the Mid-Atlantic States District Council Participating Locals Annuity Fund ("Annuity Fund"). Each of the subject affidavits contains a spreadsheet specifying unpaid contributions, liquidated damages, and interest. The spreadsheet attached to Ms. Cole's affidavit on behalf of the Rodman Funds is superseded by the spreadsheet attached to Plaintiffs' supplement. (ECF No. 12-1).

Ellen O. Boardman of O'Donoghue & O'Donoghue LLP also submitted a declaration in support of Plaintiffs' claim for attorneys' fees and costs (ECF No. 10-3).

After an independent determination of damages based on the affidavits and supporting documentation provided, the court finds that Plaintiffs are owed for only 231 hours. Seven payroll sheets attached that account for October 9, 2015, through December 12, 2015, are clear and add up to a total of 207 hours. (ECF No. 10-5, at 6-12). Perplexingly, Plaintiffs then attached three more sheets accounting for the week of December 13-19, 2015, each of which shows twenty-four hours worked, but in three different ways. (ECF No. 10-5, at 13-15). One says the contractor worked eight hours per day on December

9

14, 15, and 16.  (ECF No. 10-5, at 13).  Another says the contractor worked eight hours per day December 13, 14, and 15, but was not paid for work on December 13 because he was required to repay an amount from November 22.  (ECF No. 10-5, at 14).  A third says that the contractor worked eight hours per day December 13, 14, and 15, and was paid in full for all three days.  (ECF No. 10-5, at 15).  If the contractor worked eight hours per day for three days, as each of these payroll sheets indicates, then the twenty-four hours worked that week added to the 207 hours from previous weeks entitles Plaintiffs to only 231 hours' worth of contributions.[1]

Pursuant to the Agreement, Defendant, as employer, was to pay the Rodman Funds: $6.30 per hour to the Health & Welfare Fund, $7.65 per hour to the Pension Fund, $0.63 per hour to the Apprenticeship Fund, $1.00 per hour to the Vacation Fund, for a total of $15.58 per hour.  Defendant was required to pay $4.00 per hour to the Annuity Fund.  Further, Defendant was to pay six

---

[1] Even if the contractor worked all four of the days from December 13 through 16, but somehow payroll failed to account for the fourth day in any of the three sheets Plaintiffs have submitted, then Plaintiffs would be owed contributions for 239 hours, not 235 hours.  Because none of the individual payroll sheets suggest thirty-two, as opposed to twenty-four, hours worked that week, the court finds that Plaintiffs are entitled to only 231 hours.

percent (6%) of gross wages as "working assessment" (ECF No. 10-4, p. 215, ¶ G).

Based on 231 hours worked, the court calculates the Rodman Funds are owed $3,598.98. Pursuant to the affidavit of Rhonda St. Clair, the Annuity Fund alleges it is owed $924 for unpaid contributions. The record supports the Annuity's demand for $924 in unpaid contributions.

**B.   Liquidated Damages and Interest**

The Rodman Funds seek $366.13 in liquidated damages and $765.61 in interest assessed through February 21, 2017, on late contributions. The affidavit of Kathy Cole indicates that the agreement between the parties obligates Defendant to pay ten percent (10%) as liquidated damages and one and one-half percent (1-1/2%) per month as interest from the date of delinquency to the date of payment. Pursuant to the Rodman Trust Funds collection and audit procedure (ECF No. 10-5, p. 21), reports and contributions are due by the 20th day of the month after hours were incurred. Interest at the rate of one and one-half percent (1.5%) per month is assessed from the due date until the date of payment. Liquidated damages of ten percent (10%) will be assessed if payment is not postmarked on the last day of the month in which contributions are due. The court calculates

interest through July 31, 2017, to be $1,013.68 and liquidated damages to be $359.90.

The affidavit of Rhonda St. Clair recites that pursuant to the Annuity Funds' Restated Agreement of Trust, the Defendant is obligated to pay it liquidated damages in the amount of $184.80 which represents twenty-percent (20%) of the contributions owed and $125.72 in interest from the date of delinquency through February 21, 2017, representing the rate of twelve percent (12%) per annum.  These figures are supported by the record.  The court calculates interest through July 31, 2017, to be $174.60.

    **C.**    **Working Assessment**

The Rodman Funds seek $421.20 as working assessment. Pursuant to the parties' agreement, the employer is to deduct from employees' wages the sum of six percent (6%) of the gross wages and remit same to the union (ECF No. 10-4, p. 215 ¶ G). Plaintiffs appear to have duplicated certain calculations of these dues.  (ECF No. 12-1).  For October, Plaintiffs identify gross wages of $1,539.00 that align with the payroll sheets for October 9-31.  (ECF No. 10-5, at 6-8).  For November Plaintiffs calculate $3,078.00 in wages, which seems to account for all hours worked from November 1 through December 4.  (ECF No. 10-5, at 8-11).  Plaintiffs then calculate total wages of $2,403.00 for December, which appears to account for: seventeen hours from

12

December 1-4 that are included in their November total, forty hours from the first full week in December that appear properly documented, and thirty-two hours for the week of December 13-19, for which, despite the conflicting information in each payroll sheet as discussed above, only twenty-four hours are indicated. (*See* ECF No. 10-5, at 11-15).  The court calculates a total of $6,345.00 in gross wages, which entitles Plaintiffs to $380.70 in working assessment dues.

### D.   Attorneys' Fees

Plaintiffs seek $5,556.75 in attorneys' fees.  In support of this request, Plaintiffs submit a Declaration of Attorney's Fees and a spreadsheet of the hours billed by Plaintiff's counsel.  (ECF No. 10-3).  Exhibit 1 indicates that the firm spent 23.25 hours on this case on behalf of the Plaintiffs at a rate of $239 per hour for attorney time.  The sum requested is consistent with the rates and times listed by Exhibit 1. Plaintiffs attorneys' fees will be reduced, however, for failing to explain sufficiently its damages calculations.  In spite of the court's order to supplement the record to justify Plaintiffs' damages calculations, Plaintiffs submitted a supplement seeking amounts that were not supported by the record, including a discrepancy between the hours for which contributions were sought by the Annuity Fund and the Rodman

13

Funds, which should have indicated to Plaintiffs' attorneys that further scrutiny was warranted. Accordingly, Plaintiffs will be awarded $3,556.75 for attorneys' fees, a reduction of $2,000.

**E.   Costs**

Plaintiffs seek $675.00 in costs. In support of this request, Plaintiffs recite that in addition to the $400 filing fee to commence this action, $275 was spent for service of process on Defendant (ECF No. 10-3). The record supports this requested amount.

**IV. Conclusion**

For the foregoing reasons, Plaintiffs' motion for the entry of default judgment and supplement will be granted in part. A separate order will follow.

                                                             /s/
                                          DEBORAH K. CHASANOW
                                          United States District Judge